## STATE OF CONNECTICUT *v.* RANDALL WASKIEWICZ
## (AC 21437)

Schaller, Mihalakos and Shea, Js.

Argued November 28, 2001—officially released February 19, 2002

*James M. Fox*, special public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Terri Sonnemann*, deputy assistant state's attorney, for the appellee (state).

*Opinion*

SHEA, J. The defendant appeals from the judgments of the trial court revoking his probation. The defendant claims that, because he was involuntarily deprived of

the opportunity to meet a condition of his probation, the court improperly (1) found that he had violated that condition and (2) revoked his probation. We affirm the judgments of the trial court.

The following facts are necessary for our resolution of this appeal. The defendant was charged in two informations with interfering with an officer in violation of General Statutes § 53a-167a[1] and assault in the third degree in violation of General Statutes § 53a-61.[2] The defendant pleaded guilty to the charges under the *Alford* doctrine,[3] and the court imposed a total effective sentence of three years incarceration, execution suspended, with three years probation. In addition to the general conditions of probation, the court imposed several special conditions of probation, one of which was a requirement that the defendant attend the Project Green program at Cheney House in Hartford for four months.[4]

The defendant began his residency at Cheney House on September 28, 1999. On January 5, 2000, the defendant was discharged from the program as the result of an incident on the previous day in which he was accused

[1] General Statutes § 53a-167a (a) provides: "A person is guilty of interfering with an officer when he obstructs, resists, hinders or endangers any peace officer or fireman in the performance of his duties."

[2] General Statutes § 53a-61 (a) provides: "A person is guilty of assault in the third degree when: (1) With intent to cause physical injury to another person, he causes such injury to such person or to a third person; or (2) he recklessly causes serious physical injury to another person; or (3) with criminal negligence, he causes physical injury to another person by means of a deadly weapon, a dangerous instrument or an electronic defense weapon."

[3] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). "A defendant who pleads guilty under the *Alford* doctrine does not admit guilt, but acknowledges that the state's evidence against him is so strong that he is prepared to accept the entry of a guilty plea." *Henry* v. *Commissioner of Correction*, 60 Conn. App. 313, 315 n.1, 759 A.2d 118 (2000).

[4] Cheney House is a community correctional facility. Project Green is a four to six month intensive treatment program administered at Cheney House that combines substance abuse counseling and treatment with community service projects.

of threatening Perry Johnson, another resident of Cheney House. On May 15, 2000, a probation revocation hearing was held pursuant to General Statutes § 53a-32.[5] During the hearing, the program director for Cheney House testified that the defendant had received a number of disciplinary citations during his residency at the facility. Those citations included four instances in which the defendant was verbally abusive to the staff. Under the rules of the program, any one of the defendant's prior disciplinary citations was sufficient to discharge him from the program. Testifying on his own behalf, the defendant admitted that he had violated a number of rules while at Cheney House. The defendant denied, however, that he had threatened Johnson.

On the basis of the evidence presented at the hearing, the court found that the defendant had violated his probation. Accordingly, the court terminated the defendant's probation and ordered him to serve two years of his suspended sentence. This appeal followed.

"A revocation of probation hearing has two distinct components and two purposes. A factual determination by a trial court as to whether a probationer has violated a condition of probation must first be made. If a violation is found, a court must next determine whether

[5] General Statutes § 53a-32 provides in relevant part: "(a) At any time during the period of probation . . . the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation . . . . [U]pon an arrest by warrant as herein provided, the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charges. At such hearing the defendant shall be informed of the manner in which such defendant is alleged to have violated the conditions of such defendant's probation . . . .

"(b) If such violation is established, the court may . . . (4) revoke the sentence of probation . . . . If such sentence is revoked, the court shall require the defendant to serve the sentence imposed or impose any lesser sentence. . . . No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of reliable and probative evidence and by a preponderance of the evidence."

probation should be revoked because the beneficial aspects of probation are no longer being served. . . . Since there are two distinct components of the revocation hearing, our standard of review differs depending on which part of the hearing we are reviewing. . . .

"A trial court initially makes a factual determination of whether a condition of probation has been violated. In making its factual determination, the trial court is entitled to draw reasonable and logical inferences from the evidence. . . . Our review is limited to whether such a finding was clearly erroneous. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . In making this determination, every reasonable presumption must be given in favor of the trial court's ruling. . . .

"The standard of review of the trial court's decision at the sentencing phase of the revocation of probation hearing is whether the trial court exercised its discretion properly by reinstating the original sentence and ordering incarceration. . . . In determining whether there has been an abuse of discretion, every reasonable presumption should be given in favor of the correctness of the court's ruling. . . . Reversal is required only where an abuse of discretion is manifest or where injustice appears to have been done." (Citation omitted; internal quotation marks omitted.) *State* v. *Hill*, 256 Conn. 412, 425–26, 773 A.2d 931 (2001).

The evidence presented at the probation hearing was sufficient to support a finding that the defendant violated his probation. The defendant acknowledged that one of the conditions of his probation was that he spend four months at Cheney House and that he was aware of that condition. It was undisputed that the defendant

failed to complete the required term due to his discharge from the facility three weeks short of completion.

The defendant, however, attempts to impart significance to the circumstances surrounding his failure to remain at the treatment facility for the requisite time period. Specifically, he bases his claim on the fact that he did not willingly leave the facility, but rather was forced to depart. This claim squarely contradicts the factual findings of the court. Following the probation hearing, the court stated: "As a condition of the probation . . . [the defendant] was to complete the program at Cheney House. He didn't do that. *He didn't do that by his own doing, by his own behavior.* He violated the privileges that were afforded him at Cheney House. He was disruptive. He harassed the employees and threatened other residents. . . . It would appear to the court based on the testimony and evidence presented that there was ample reason long before January 5, 2000, to terminate him. Nonetheless, that was done effectively on January 5, [2000]. And he thereby, again, *of his own doing,* failed to comply with the condition of probation . . . ." (Emphasis added.) Thus, the court made clear that its decision was based on a review of the defendant's own conduct and actions within his control.

Even if we were to credit the defendant's assertion that his failure to comply with the terms of his probation was not wilful, we would be obliged to affirm the court's decision because wilfulness is not an element of the offense of violation of probation.[6] See id., 426. We conclude that the court's findings that the defendant violated his probation were not clearly erroneous.

---

[6] In his reply brief, the defendant urges us to apply the due process analysis of *Bearden* v. *Georgia*, 461 U.S. 660, 103 S. Ct. 2064, 76 L. Ed. 2d 221 (1983). "That holding, however, was grounded on the court's sensitivity to the treatment of indigents in the criminal justice system and its recognition of the due process and equal protection concerns that the indigence of a defendant raises." *State* v. *Hill,* supra, 256 Conn. 421. Because no such concern is present in this case, *Bearden* is inapplicable. See id.

We now turn our attention to a consideration of whether the court abused its discretion by revoking the defendant's probation under the circumstances of this case. "A revocation proceeding is held to determine whether the goals of rehabilitation thought to be served by probation have faltered, requiring an end to the conditional freedom obtained by a defendant at a sentencing that allowed him or her to serve less than a full sentence. . . . [T]he ultimate question [in the probation process is] whether the probationer is still a good risk . . . . This determination involves the consideration of the goals of probation, including whether the probationer's behavior is inimical to his own rehabilitation, as well as to the safety of the public." (Citation omitted; internal quotation marks omitted.) Id., 427.

Substantial evidence was presented at the revocation hearing that would support a finding by the court that the defendant's rehabilitation at Cheney House was thwarted by his own behavior and, accordingly, that continued probation was not justified. The program director of Cheney House testified that participants in the Project Green program are advised of the rules and regulations, including that they may be terminated for any major rule violation such as threatening a staff member or another client. The program director also testified that the defendant had violated the program rules on numerous occasions. The nature of those offenses ranged from possessing food in an unauthorized area to verbally abusing and threatening the staff. In addition to the rules infractions for which the defendant was formally cited, the closing summary report[7] of the defendant's conduct while at Cheney House indicated that the defendant "constantly displayed his anger at staff, acted irrational and was explosive at times." On the basis of the foregoing, the court found that

[7] A closing summary report is a comprehensive critique of a client's stay at Cheney House prepared by case managers at the facility.

that the defendant was not making a sincere effort to succeed at Cheney House.

We conclude that the court reasonably exercised its discretion in concluding that the beneficial aspects of probation were not being served and in revoking the defendant's probation.

The judgments are affirmed.